OPINION OF THE COURT
Bellacosa, J.
We hold in this case involving the height of a building on Park Avenue in Manhattan, already constructed in excess of the height limitations of applicable zoning provisions, that *279 estoppel is not available to preclude a governmental entity from discharging its statutory duties or to compel ratification of prior erroneous implementation in the issuance of an invalid building permit. The rare exception to the unavailability of estoppel against governmental entities may not, in any event, be invoked in this case where reasonable diligence by a good-faith inquirer would have disclosed the true facts and the bureaucratic error. We may not address the additional claim that governmental correction of prior administrative action, erroneously overriding applicable zoning provisions, constitutes an unconstitutional taking inasmuch as there is a pending variance application. We thus affirm the Appellate Division’s order affirming the denial of relief to plaintiff.
Owner-builder Parkview’s property, purchased in 1982, is at the southeast corner of Park Avenue and 96th Street, located 90- to 190-feet east of Park Avenue. A portion of the property is within a Special Park Improvement District (P.I.D.) created by enactment of the Board of Estimate of the City of New York in 1973. The enabling and authorizing resolution limits the height of new buildings in that district to 19 stories or 210 feet, whichever is less. The P.I.D. boundary ran uniformly 150-feet east of Park Avenue until, by resolution of the Board of Estimate on March 3, 1983, the metes and bounds description of the P.I.D. was amended, providing in part for a reduction from 150 to 100 feet between East 88 Street to midway between 95th and 96th Streets. The boundary north of this midblock division, pursuant to the metes and bounds, remained at all times 150 feet. Plaintiff’s property was thus unaffected by this 1983 change and has always been governed by the 1973 original enactment.
Zoning Map 6b accompanying the March 1983 resolution depicted the amended boundary with a dotted line which fell within a shaded area constituting the existing P.I.D. A numerical designation of "150”, included on earlier versions of the map to show the setback, had been removed and a new designation of "100” was inserted adjacent to the dotted line. This left no numerical designation along the northern part of the boundary. The "150” designation signaling the retention of the boundary north of the 95th-96th Street midblock line was reinserted on a version of Map 6b published to reflect a subsequent resolution of September 19, 1985.
Parkview’s initial new building application, submitted on June 5, 1985, was rejected for failure to show compliance with *280 the P.I.D. height limitation. Based upon its interpretation of the version of Zoning Map 6b existing in the summer of 1985, Parkview concluded that a 100-foot boundary controlled, and its revised building application, submitted on July 31, 1985, limited the height of the proposed new building to 19 stories between its property line and 100 feet from Park Avenue. The portion of the building setback more than 100 feet from Park Avenue was to rise 31 stories. The application was approved by the Department of Buildings as conforming with all zoning requirements on August 12, 1985 and, after rereview, a building permit was issued on November 21, 1985 by the Borough Superintendent. There is no dispute that at the time the permit was issued the Department erroneously interpreted amended Map 6b as changing the boundary on 96th Street to 100 feet. On July 11, 1986, however, after substantial construction, the Borough Superintendent of the Department of Buildings issued a stop work order for those portions of the building over 19 stories within the full 150 feet of Park Avenue. After review, the Commissioner of Buildings partially revoked the building permit, consistent with the stop work order, on the grounds that the permit, to the extent it authorized a height of 31 stories from 100-feet back instead of 150-feet back, was invalid when issued.
Parkview appealed the Commissioner’s decision to the Board of Standards and Appeals (BSA), which denied the appeal and sustained the determination of the Commissioner. In sum, the BSA found that the dotted lines on Zoning Map 6b within the shaded P.I.D., expressly connoting a reduction to 100 from 150 feet of the protected area, excluded the 96th Street frontage of plaintiff from any change; that the original resolution with its metes and bounds description, which was never changed in any event, controlled over the map depicting the boundaries even if the map could be misread; and that the boundary-height limitation applicable to Parkview under the metes and bounds description was and had always been 150-feet east of Park Avenue.
Parkview then turned to the courts, essentially in an article 78 proceeding, seeking to set aside the partial revocation of its building permit. It sought to reinstate the full permit, arguing that the final BSA determination was arbitrary and capricious or affected by error of law because the original permit was properly issued; that its rights pursuant to that permit had vested; that its reliance on the permit caused substantial and irreparable harm requiring that the City be estopped from *281 revoking the permit; and that the partial revocation deprived Parkview of its property without due process or just compensation.
The IAS Judge dismissed the petition holding that the BSA’s determination was reasonable and supported by substantial evidence that the building permit was invalid when issued, vesting no rights, because the building plans did not comport with the metes and bounds description for the P.I.D. as contained in the controlling original legislative enactment of the Board of Estimate. The court also held that estoppel was unavailable as a matter of law. Finally, the constitutional taking argument was dismissed as premature because Park-view had failed to apply for a variance which is a prerequisite to that claim. The Appellate Division affirmed, and this appeal ensued by leave of this court.
Parkview argues that its original permit was issued in conformity with a reasonable interpretation of the zoning map, thus making it valid when issued; that the principles of equitable estoppel preclude the partial revocation of the building permit even if the permit was erroneously issued; and that the City’s partial revocation of its permit constitutes a taking in violation of due process of law and without just compensation. The City counters that the decision of the BSA has a rational basis because the permit was invalid when issued; that equitable estoppel is not available to estop a municipality from enforcing its zoning laws when the building permit issued by the municipality violated those zoning laws; and that the petition below failed to state a claim for an unconstitutional taking.
There can be little quarrel with the proposition that the New York City Department of Buildings has no discretion to issue a building permit which fails to conform with applicable provisions of law, and that the Commissioner may revoke a permit which "has been issued in error and conditions are such that a permit should not have been issued” (Administrative Code of City of New York §§ 27-191, 27-197). Since discrepancies between the map and enabling resolution are controlled by the specifics of the resolution (New York City Zoning Resolution §§ 11-22, 12-01), the original permit in this case was invalid inasmuch as it authorized construction within the 150-foot P.I.D. above 19 stories in violation of New York City Zoning Resolution § 92-06 (2 Journal of Proceedings of Board of Estimate of City of NY, at 1708 [Cal No. 6, Apr. *282 23, 1973], as amended [Cal No. 8, Mar. 3, 1983]). Therefore, the subsequent BSA action in ratifying the decision of the Commissioner partially revoking Parkview’s permit had a sound legal basis. Indeed, there was no discretion reposed in these authorities to do otherwise at that point and on the record before them at that time.
Turning to the next stage of our analysis, we have only recently once again said that "[generally, estoppel may not be invoked against a municipal agency to prevent it from discharging its statutory duties” (Scruggs-Leftwich v Rivercross Tenants’ Corp., 70 NY2d 849, citing Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 33; Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d 88, 93; see also, Matter of E.F.S. Ventures Corp. v Foster, 71 NY2d 359 [decided herewith]). Moreover, "[e]stoppel is not available against a local government unit for the purpose of ratifying an administrative error” (Morley v Arricale, 66 NY2d 665, 667). In particular, "[a] municipality, it is settled, is not estopped from enforcing its zoning laws either by the issuance of a building permit or by laches” (City of Yonkers v Rentways, Inc., 304 NY 499, 505) and "[t]he prior issue to petitioner of a building permit could not 'confer rights in contravention of the zoning laws’ ” (Matter of B & G Constr. Corp. v Board of Appeals, 309 NY 730, 732, citing City of Buffalo v Roadway Tr. Co., 303 NY 453, 463). Insofar as estoppel is not available to preclude a municipality from enforcing the provisions of its zoning laws and the mistaken or erroneous issuance of a permit does not estop a municipality from correcting errors, even where there are harsh results (Parsa v State of New York, 64 NY2d 143, 147; Matter of New York City v City Civ. Serv. Commn., 60 NY2d 436, 448-449), the City should not be estopped here from revoking that portion of the building permit which violated the long-standing zoning limits imposed by the applicable P.I.D. resolution. Even if there was municipal error in one map and in the mistaken administrative issuance of the original permit, those factors would be completely outweighed in this case by the doctrine that reasonable diligence would have readily uncovered for a good-faith inquirer the existence of the unequivocal limitations of 150 feet in the original binding metes and bounds description of the enabling legislation, and that this boundary has never been changed by the Board of Estimate. The policy reasons which foreclose estoppel against a governmental entity in all but the rarest cases thus have irrefutable cogency in this case.
*283 Finally, Parkview’s claim that the City’s action constitutes a taking without due process of law or just compensation may not be addressed in this action and at this time because Parkview had failed to apply for a variance (see, Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 519; see also, Scarsdale Supply Co. v Village of Scarsdale, 8 NY2d 325, 330; Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269, 273). The variance application now pending is, of course, not affected by our decision today.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed, with costs.